# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2008

Charles R. Fulbruge III
Clerk

No. 07-70032

JOSE LUIS VILLEGAS

                              Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal
Justice, Correctional Institutions Division

                              Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
(06-CV-402)

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

This case involves an application for a certificate of appealability ("COA")
filed by Jose Luis Villegas to appeal the district court's denial of habeas corpus
relief under 28 U.S.C. § 2254. Villegas seeks a COA to appeal the denial of his
claims that counsel provided ineffective assistance during the penalty phase of
his trial by failing to (1) investigate thoroughly his background, character,
personal circumstances, and mental health history; and (2) present adequate

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

evidence of his background, character, personal circumstances, and mental health history in a manner sufficient to provide the jury with a vehicle to consider and give meaningful effect to the evidence in such a way that it would mitigate the imposition of the death penalty. Because we conclude that Villegas has failed to make a substantial showing of the denial of a constitutional right, we deny his application for a COA.

## I. BACKGROUND

The district court set forth the relevant facts as follows:

A jury convicted Villegas of capital murder for killing his girlfriend, Erida Perez Salazar, her three-year-old son Jacob, and her mother, Alma Perez. At approximately 9:15 a.m. on January 22, 2001, Lionicio Perez returned home after being excused early from jury service. Mr. Perez found his wife [sic] bruised body lying lifeless in a pool of blood. He ran to a neighbor's house, asked his neighbor to call the police, and returned to find the bodies of his daughter and grandson. When the police arrived, a neighbor said that she saw Villegas leaving the Perez home at approximately 8:45 a.m.

At approximately 9:30 a.m., the police spotted Villegas in Ms. Salazar's vehicle. The police apprehended Villegas after a high-speed chase and foot pursuit. Villegas had three baggies of cocaine in his possession when arrested. After being advised of his rights, Villegas confessed to the three murders.

Villegas described how he arrived at the Perez home at 5:00 a.m. that morning. He and Ms. Salazar consumed around $200 of cocaine. After Mrs. Perez returned home from taking Ms. Salazar's daughter to school, she discovered Villegas' presence in the home. Mrs. Perez had previously warned her daughter not to let Villegas enter the house. When Mrs. Perez ordered Villegas to leave, he stabbed her several times with a kitchen knife. Villegas then went to a bedroom and stabbed Ms. Salazar and her son to death. Villegas left in Ms. Salazar's vehicle, pawned a television he stole from the Perez home, and bought more cocaine. Villegas told the police that he wanted to return to the Perez home to commit suicide by overdosing on cocaine, but fled when he saw police already in the home.

On May 16, 2002, a jury found Villegas guilty of capital murder and sentenced him to death. He appealed his conviction and sentence to the Texas Court of Criminal Appeals ("TCCA"), which affirmed his conviction and sentence in an unpublished opinion. See Villegas v. Texas, No. 74,361 (Tex. Crim. App. Feb. 14, 2004). He then filed a timely state application for writ of habeas corpus. The state habeas court held an evidentiary hearing, issued findings of fact and conclusions of law, and recommended that habeas relief be denied. The TCCA denied relief in an unpublished order. See Ex parte Villegas, No. WR-62023-01, 2005 WL 2220028 (Tex. Crim. App. Sept. 14, 2005).

On September 14, 2006, Villegas filed a timely federal petition for writ of habeas corpus. In his petition, he argued, inter alia, that counsel provided ineffective assistance during the penalty phase of his trial by failing to (1) investigate thoroughly his background, character, personal circumstances, and mental health history; and (2) present adequate evidence of his background, character, personal circumstances, and mental health history in a manner sufficient to provide the jury with a vehicle to consider and give meaningful effect to the evidence in such a way that it would mitigate the imposition of the death penalty.[1] The district court denied both claims on the merits and subsequently denied a COA. Villegas filed a timely notice of appeal and the instant application for a COA.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). According to the Supreme Court, this requirement includes a showing that "reasonable jurists could debate whether

---

[1] Although Villegas raised eight other claims in his initial federal habeas petition, he does not seek a COA with respect to those claims on appeal.

(or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Id. at 483-84 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). As the Supreme Court explained:

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.

Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003).

In sum, Villegas need not show that his habeas petition will ultimately prevail on the merits in order for this court to issue a COA. Id. at 337. In fact, the Supreme Court has specifically instructed that a court of appeals should not deny a COA simply because the petitioner has not demonstrated an entitlement to relief. Id. Instead, "where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 338 (citing Slack, 529 U.S. at 484). For claims that were adjudicated on the merits in state court, deference to the state court's decision is required unless the adjudication was "contrary to, or involved an unreasonable application of, clearly establish Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## III. ANALYSIS

Both claims raised by Villegas challenge whether trial counsel provided ineffective assistance. The Supreme Court has set forth a familiar two-prong test for examining such claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Sonnier v. Quarterman, 476 F.3d 349, 356 (5th Cir. 2007).

Villegas's specific challenge goes towards the sufficiency of counsel's investigation and presentation of mitigating evidence during the penalty phase of his trial. Generally accepted standards of competence require that counsel conduct a reasonable investigation into an accused's background and character. Miniel v. Cockrell, 339 F.3d 331, 344 (2003) (citing Williams v. Taylor, 529 U.S. 362 (2000)). In evaluating counsel's performance, we must conduct an objective review measured for "reasonableness under prevailing professional norms," which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." Wiggins v. Smith, 539 U.S. 510, 523 (2003) (quoting Strickland, 466 U.S. at 688-89). To make this determination, the Supreme Court has condoned reliance upon the ABA Guidelines, which provide that counsel's investigation "should comprise efforts to discover all reasonably available mitigating evidence to rebut any aggravating evidence that may be introduced by the prosecutor." Id. at 524 (quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty

Cases 11.4.1(C), p.93 (1989)). A reasonable investigation will most likely include topics such as the accused's medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences. Id. (citing ABA Guidelines 11.8.6, p. 133). However, counsel's failure to research and present mitigating evidence during the penalty phase is not per se ineffective assistance. See Ransom v. Johnson, 126 F.3d 716, 723 (5th Cir. 1997). Instead, "[s]trategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 690-91). "Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case." Id. at 533. As the Supreme Court reiterated, "our principal concern in deciding whether [counsel] exercised 'reasonable professional judgment,' is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . was itself reasonable." Id. at 522-23 (quoting Strickland, 466 U.S. at 691). There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," and we may "not find ineffective assistance of counsel merely because [we] disagree[] with counsel's trial strategy." Bell v. Cone, 535 U.S. 685, 698 (2002); Strickland, 466 U.S. at 689.

During the penalty phase in this case, the state presented evidence regarding the profound impact this crime had on the surviving family members. The state also presented the testimony of various police and probation officers regarding other crimes and bad acts Villegas committed over the years, including a number of assaults against family members, a burglary and

6

shoplifting charge, and an incident of indecency with his five-year old daughter. Villegas's probation officer testified that Villegas was not a good probationer.

Villegas presented seven mitigating witnesses. Dr. William Swan Jr. testified about the prolonged and painful death of Villegas's mother, who died from scleroderma and underwent 18 amputations prior to her death. Christina Barrera, Villegas's older sister, testified about their mother's illness and its impact on the family, their father's alcoholism and abuse, and her concerns over Villegas's mental health. Arcelia Casarez, Villegas's ex-mother-in-law, testified about Villegas's troubled relationship with her daughter, her concerns over Villegas's mental health, and that she still very much cared for Villegas. San Juanita Luna, Villegas's cousin, testified about the death of Villegas's mother and his father's alcoholism. Joseph Hovart, Ph.D., a psychologist, testified that Villegas suffered from intermittent explosive, dissociative, and major depressive disorders, recurrent and severe. He also testified about Villegas's use of drugs, the trauma Villegas experienced from witnessing his mother's death, and Villegas's abusive relationship with his father. He opined, "I think that when he killed those three people, that it was a function of the intermittent explosive disorder and the cocaine abuse and not sleeping at all for a period of time." Jose Luis Villegas, Sr., Villegas's father, testified about his relationship with his son and that he was a violent father. Finally, Dennis Longmire testified about the Texas death penalty and his belief that it did not deter crime and could perpetuate violence through institutional example.[2]

During the state habeas evidentiary hearing, Villegas presented additional mitigation evidence. His older sister provided a much more detailed account of

---

[2] During the guilt-innocence phase, Dr. Carlos Estrada, a psychiatrist, also testified about Villegas's mental health problems and his social and life history that contributed to these problems. He diagnosed Villegas with intermittent explosive, post-traumatic stress, and dissociative disorders and addiction to cocaine, marijuana, and alcohol. He concluded that intermittent explosive disorder was the condition most related to the crime.

Villegas's childhood, including his mental health history and his relationship with their abusive father. Carolina Villegas, Villegas's younger sister, also testified about his childhood, including his mental health history, his drug problems, his abusive relationship with their father, and the impact their mother's death had on the family. Dr. Estrada provided a much more detailed account of Villegas's intermittent explosive disorder. He also diagnosed Villegas with post-traumatic stress disorder, which he opined resulted from Villegas's abusive childhood and having witnessed his mother's death. He further opined that Villegas's condition was treatable. He testified about his frustrations with explaining these concepts to counsel and to the jury, claiming to be unable to relate, in a meaningful manner, an accurate picture of Villegas's mental illness and how it related to the tragic events in this case. Finally, Villegas's cousin filed an affidavit indicating that she thought Villegas was mentally slow.[3]

In response, the state presented various affidavits and exhibits from individuals who worked on Villegas's case: Grant Jones, trial co-counsel, Lisa Lawrence, a paralegal, and Eva Reed, a mitigation specialist. Jones indicated that the defense team conducted a thorough investigation into Villegas's personal, social, and mental health histories and made a strategic choice not to call Carolina Villegas, Villegas's younger sister, because of her mental health problems and her reluctance to testify. He further indicated that Dr. Estrada never voiced his frustrations about being unable to discuss Villegas's diagnosis

---

[3] Although Norma Villegas, Villegas's wife, exercised her spousal privilege to not testify during the penalty phase, she did testify at the state habeas evidentiary hearing about her marriage, Villegas's abuse of drugs and alcohol, and his role as a loving father. However, counsel can hardly be held accountable for not presenting such evidence to the jury during the penalty phase given that Norma Villegas exercised her state-recognized privilege to not testify on her husband's behalf. Villegas also presented to the state habeas court two affidavits from jury members regarding their deliberations. However, Rule 606(b) of the Federal Rules of Evidence prohibits the use of such evidence to determine the effect any particular thing might have had on the outcome of a verdict. Summers v. Dretke, 431 F.3d 861, 873 (5th Cir. 2005).

in a manner that would be meaningful to the jury. Lawrence and Reed each confirmed this information in separate affidavits.

> In reviewing this evidence, the state habeas court stated:

> Villegas'[s] trial attorneys made a thorough investigation of his social history, including the discovery of evidence of the many abuses caused by his father, the trauma caused by his mother's terminal illness, and Jose Villegas'[s] own history of substance abuse. The Court further finds that, comparing the information available to the defense . . . with the testimony of witnesses at the writ hearing, Jose Villegas has offered virtually no new information that was not already known to the defense attorneys by their pre-trial investigation of the case.

The state habeas court also found that counsel exhibited reasonable and informed strategic decisionmaking in investigating and presenting mitigating evidence during the penalty phase. Thus, the state habeas court concluded that Villegas failed to establish that counsel's performance was deficient.

The district court below likewise concluded that although Villegas amassed additional mitigation evidence at his state habeas hearing, that evidence was largely cumulative and differed from the evidence presented at trial only in detail, not in mitigation thrust. Moreover, according to the district court, counsel made a consistent effort throughout the penalty phase to connect how Villegas's mental health problems, drug and alcohol abuse, and family history contributed to the murders. Against this backdrop, the jury had to evaluate Villegas's violent background, lengthy criminal history, and the fact that he brutally stabbed three individuals, including a three-year old child. Based on the record evidence, the district court agreed with the state habeas court that "had the jury been confronted with the few pieces of additional mitigating evidence put forward by Jose Villegas in connection with the writ proceeding, there is no reasonable probability that it would have resulted in a

different verdict or sentence" and concluded that the state habeas court did not unreasonably apply federal law in rejecting Villegas's Wiggins claims.

We agree. This is not a case in which counsel did nothing. In fact, Villegas concedes that counsel undoubtedly investigated his background and mental health history sufficient enough to formulate a defense strategy. He simply challenges how that strategy was executed. For example, he argues that "it is unclear how much time [counsel] spent gaining an understanding of his mental condition and how his past and history related to it. . . . [and] whether [counsel] investigated enough or educated themselves enough to know how to execute that strategy at trial." Furthermore, he argues that counsel did not connect his entire past "in such a manner that the jury could gain a picture of who [he] was and why he was less culpable than other defendants who did not suffer from such maladies." This court rejected similar arguments in Coble v. Quarterman, 496 F.3d 430 (5th Cir. 2007). In Coble, the petitioner argued, inter alia, that (1) counsel did not adequately prepare mitigating witnesses, (2) these witnesses could have been presented in a more effective manner, and (3) counsel failed to adequately present a coherent theory regarding the mitigation case. Id. at 436-37. In rejecting these arguments, this court emphasized that "[at] its base, [the petitioner's] current challenge is to the strategy employed by trial counsel. Such a challenge does not establish ineffective assistance." Id. at 437 (citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003)). Here, Villegas is equally unable to articulate exactly how counsel's performance was deficient other than summarily concluding that counsel could have presented a more persuasive mitigation case. Stated differently, Villegas challenges only the persuasiveness of an otherwise reasonable mitigation strategy employed by counsel after conducting a thorough investigation, something Strickland and its progeny prohibit. That is not to say that under some circumstances, the presentation of mitigation evidence can be so inadequate that it amounts to no strategy at all or

falls outside the wide range of reasonable assistance as determined by prevailing professional norms, but this is not one of those cases. After reviewing the record, we are unable to say that counsel's investigation and presentation of mitigation evidence were constitutionally deficient.

In short, we agree that the additional evidence gathered by Villegas at the state habeas hearing was largely cumulative,[4] the state habeas court did not unreasonably apply federal law in rejecting Villegas's Wiggins claims, and it is beyond debate that Villegas has not made a substantial showing of the denial of a constitutional right.

## IV.  CONCLUSION

For the foregoing reasons, the application for a COA is denied.

---

[4] Villegas argues that counsel never presented any evidence that his mental health condition was treatable and thus, the jury was forced to conclude that he would always be a threat to society. However, in closing argument, counsel argued that Villegas would not be a threat to society while incarcerated because of prisons's "highly restrictive environment," he would receive "treatment or counseling" for his mental illness, and he would "be separated from drugs and from the stressors that caused his violent behaviors." Thus, counsel presented some evidence from which a rational jury could have concluded that Villegas would not always be a threat to society.